■ ANONYMOUS, Appellant-Respondent, v ANONYMOUS, Respondent-Appellant. [649 NYS2d 665] —Order of the Supreme Court, New York County (Lewis Friedman, J.), entered June 28, 1995, which, on cross-motions to enforce a stipulation settling a matrimonial action, *inter alia*, granted plaintiff's motion for a judgment of maintenance arrears, and granted defendant's motion for a setoff against such arrears of the liquidated damages specified in the stipulation's confidentiality clause to the extent of allowing defendant disclosure with respect to his claim of breach of the confidentiality clause, is modified, on the law and facts, to the extent of denying defendant's motion, and otherwise affirmed, without costs or disbursements.

The settlement agreement entered into by these parties provides, in pertinent part:

"1. The parties covenant and agree that the terms and provisions of this Agreement (including any amendments thereto) shall be kept confidential and * * * shall not be disclosed, orally or in writing, to any person or entity. The Parties further covenant and agree that he or she shall not, in any public manner or forum (or in any manner or forum that is likely to become public); make disparaging remarks about the personal, private or family life of the other Party * * * make any remarks or relate any information about the intimate life of the other Party; or relate any information concerning the business affairs, business conduct, business associates, assets or investments of the other Party. In the event the Wife breaches any of the foregoing covenants, the Husband shall be entitled to offset his payment obligations to the Wife * * * by the amount of $500,000 per breach by the Wife. The $500,000-per-breach offset amount constitutes liquidated damages. * * * In the event the Husband breaches any of the foregoing covenants, the Wife shall retain her rights under law including

rights to be compensated for legal fees and damages resulting from such breach.

"2. Without limiting the generality of Paragraph 1, the Wife shall not, without obtaining the Husband's written consent in advance, directly or indirectly publish or cause to be published, any diary, memoir, letter, story, photograph, interview, article, essay, account, or description or depiction of any kind whatsoever, whether fictionalized or not, concerning her marriage to the Husband or any other aspect of the Husband's personal, business or financial affairs or assist or provide information to others in connection with the publication or dissemination of any such material or excerpts thereof".

Plaintiff does not claim that this agreement, in and of itself, is unenforceable as against public policy, and we have previously found that such a confidentiality agreement is enforceable (*Trump v Trump*, 179 AD2d 201, *lv denied* 80 NY2d 760). Plaintiff was represented by experienced counsel in connection with its negotiation and execution and should not be relieved of its consequences, including the liquidated damages provision, absent a showing of fraud, collusion, mistake or some such similar ground (*supra*, at 204).

However, we find that the defendant has failed to make the necessary threshold showing that the provision has been breached. Defendant has made no showing that plaintiff was the source of news stories about the disputes between the parties. In addition, with respect to reported conversations between defendant, his attorney and a male friend of plaintiff, defendant has succeeded only in showing that plaintiff's male friend was aware that the parties had disputes. There is no showing, however, that the friend had been informed of the terms of the stipulation. The conclusory allegations of the defendant and his counsel to that effect, bereft of specific evidentiary detail, are insufficient to make out a prima facie case warranting broad discovery of plaintiff's friends and acquaintances at this time. Concur—Kupferman, Nardelli and Williams, JJ.

Ellerin, J. P., concurs in a separate memorandum as follows: I am in full agreement with the holding of the majority, including that portion denying defendant's motion for discovery regarding the confidentiality agreement. However, it should be noted that the terms of this agreement go far beyond those which this Court has previously deemed enforceable.

The confidentiality agreement involved in *Trump v Trump* (179 AD2d 201, *lv denied* 80 NY2d 760), the seminal case in this area, is virtually identical to the second paragraph of the

confidentiality agreement entered into by these parties. It did not, however, attempt to limit disclosures to the remarkable extent set forth in the first paragraph of the instant agreement, which is the sole predicate for the relief sought by defendant herein. While I have serious doubts as to whether such a broad proscription should be sustained, I need not reach that issue since I agree with the finding of the majority that defendant has failed to make the necessary threshold showing that the provision, even as written, has been breached.

The only specific allegations of fact in support of defendant's claim that this agreement has been breached consist of several news stories detailing disputes between the parties and the contents of two conversations with a close male friend of plaintiff, one with defendant and one with defendant's attorney. Defendant argues that this evidence is sufficient to warrant discovery as to plaintiff's alleged breach of the confidentiality agreement. Plaintiff, on the other hand, argues that defendant has not set forth any evidence indicating that she breached the agreement and is seeking to conduct a fishing expedition.

As to the news stories, defendant has made absolutely no showing that plaintiff was their source. There is neither an allegation regarding the existence of direct evidence to that effect nor an allegation giving rise to any reason to suppose that the information was available to the media solely through plaintiff. Without more specific allegations of fact upon which to base defendant's claim that there was some causal connection between these reports in the press and any breach by plaintiff of the agreement, discovery should not be permitted.

As to the information supposedly in the hands of plaintiff's male friend, it is alleged that the friend not only knew about a specific disagreement between the parties concerning where their child would spend a certain weekend, but alleges, in general terms, that the friend, in a conversation with defendant's attorney, "was familiar with * * * the terms of the couple's coparenting agreement", and, also, that he was familiar with a dispute between the parties over who should pay for the renovation of plaintiff's apartment and a dispute between the parties concerning ownership of various items of personal property. Finally, in conclusory terms, defendant's attorney opines that it was clear to him that the friend was familiar with the terms of the parties' separation agreement.

It must be emphasized that an agreement such as this, which seeks to bind the parties to an extraordinary level of confidentiality by barring their discussion of certain issues with "any

person or entity" must, if it is to be capable of performance, be interpreted narrowly and limited strictly to its terms. That portion of the agreement that defendant claims plaintiff has breached provides that the parties are not to discuss the terms and provisions of the agreement. This language is quite clear and finite and there is certainly no reason to interpret it to encompass the disclosure by the parties of matters other than those specifically delineated. Thus, it is obviously inappropriate to interpret it in such a way that the parties would be in violation merely because they discussed with another the details of their child's prospective whereabouts on a particular weekend. While this subject is related to the terms of the agreement, which defines the parties' relationship and obligations vis-á-vis their child, it is certainly not a term of the agreement. Indeed, it is difficult to imagine how the parties could function without being able to disclose such information to others personally involved in their lives.

Similarly, defendant's allegation concerning plaintiff's friend's general familiarity with the parties' dispute over certain pieces of personal property and the renovation of plaintiff's apartment did not, in itself, reveal familiarity with the terms of the agreement. Indeed, the dispute over the renovation costs arose after the agreement was entered into and was not based on its terms. Moreover, the alleged statement by plaintiff's friend that he had convinced plaintiff to return to defendant certain furnishings as a sign of "good will" does not indicate that he had been told what plaintiff's and defendant's contractual obligations were under the agreement or even that these matters were governed by the agreement. Significantly, nothing in the agreement deters plaintiff from informing others privately that she is having a dispute with defendant as long as she does not disclose the terms of the agreement. There is no sufficient showing that that occurred.

Vague and conclusory allegations concerning disclosures of confidential information are not a sufficient basis upon which to base a claim that a confidentiality agreement has been breached (*Gordon v De Laurentiis Corp.*, 141 AD2d 435). Thus, here, defendant's attorney's conclusory statement, without evidentiary foundation, that it was clear to him that plaintiff's friend was familiar with the terms of the separation agreement, falls far short of the showing necessary to support a claimed breach and should certainly not be the basis for permitting a fishing expedition among plaintiff's friends and acquaintances about the personal details of her life. This type of discovery, by its very nature, may be said to border on

harassment. It should only be authorized if defendant has set forth evidence showing that there are specific grounds for believing that plaintiff has violated the agreement, which are here lacking.